IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AVIA ENERGY DEVELOPMENT, L.L.C., et al, | § | CASE NO. 05-39339-bjh-11 |
| | § | |
| DEBTORS. | § | (Chapter 11) |
| | § | |
| | § | (Jointly Administered with |
| | § | Case No. 05-39342-bjh-11) |

## <u>DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION</u>

DATED: May 8, 2007

Respectfully submitted,


AVIA ENERGY DEVELOPMENT, LLC.


*/s/ James C. Musselman*
By:<u>                                    </u>
    James C. Musselman, President



AVIA DE MEXICO S. DE R.L. DE C.V


*/s/   James C. Musselman*
By:<u>                                    </u>
    James C. Musselman, President



Marvin R. Mohney, Esq.
Texas Bar No. 14252500
120 Founders Square
900 Jackson Street
Dallas, Texas 75202
Telephone: 214-698-3011
Facsimile: 214-698-9207
Email: marvinmohney@aol.com
ATTORNEY FOR THE DEBTORS

# TABLE OF CONTENTS

INTRODUCTION                                                                5

ARTICLE I    DEFINITIONS                                                    5

ARTICLE II   THE DEBTORS' PLAN                                             12

ARTICLE III. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS,
             AND BAR DATES                                                13

    3.1    Administrative Claims and Priority Tax Claims are not classified
           in this Plan                                                   13
    3.2    Treatment of Administrative Claims                             13
    3.3    Treatment of Priority Tax Claims                               13
    3.4    Bar Date for Administrative Claims                             13
    3.5    Bar Date for Administrative Claims of Debtors' Professionals   13

ARTICLE IV   CLASSIFICATION OF CLAIMS AND INTERESTS                       14

    4.1    A Claim                                                        14
    4.2    Administrative Claims and Priority Tax Claims                  14
    4.3    Class 1 Claims                                                 14
    4.4    Class 2 Claims                                                 14
    4.5    Class 3 Claim                                                  14
    4.6    Class 4 Claim                                                  14
    4.7    Class 5 Claim                                                  14
    4.8    Class 6 Claim                                                  14
    4.9    Class 7 Claim                                                  14
    4.10   Class 8 Claim                                                  14
    4.11   Class 9 Claims                                                 14
    4.12   Class 10 Claims                                                15
    4.13   Class 11 Claims                                                15
    4.14   Class 12 Interests                                             15
    4.15   Class 13 Interests                                             15

ARTICLE V    TREATMENT OF CLAIMS AND INTERESTS                            15

    5.1    Miscellaneous                                                  15
    5.2    Treatment of Class 1 Claims - Other Priority Claims            15
    5.3    Treatment of Class 2 Claims - General Unsecured Claims         15
    5.4    Treatment of Class 3 Claim - Michael Farmar                    15
    5.5    Treatment of Class 4 Claim - Carlos Navarro                    16
    5.6    Treatment of Class 5 Claim - Jack Lafield                      16
    5.7    Treatment of Class 6 Claim - James Musselman                   16

| | | |
|---|---|---|
| 5.8 | Treatment of Class 7 Claims –Contract Rejection Claims | 17 |
| 5.9 | Treatment of Class 8 Claim – Hicks & Furst | 17 |
| 5.10 | Treatment of Class 9 Claim – Carlos Gomez | 18 |
| 5.11 | Treatment of Class 10 Claim  -  Intercompany Claims | 18 |
| 5.12 | Treatment of Class 11 Claims – Unknown Claims including Claims based on 'pagares" issued by Navarro | 18 |
| 5.13 | Treatment of Class 12 Interests in Avia USA | 18 |
| 5.14 | Treatment of Class 13 Interests in Avia Mexico | 18 |
| 5.15 | Separate Classes and Treatment | 19 |
| 5.16 | Claims (or Interests) May Be in More Than One Class | 19 |

ARTICLE VI   APPROVAL OF COMPROMISE AND SETTLEMENT AGREEMENT                                                                19

| | | |
|---|---|---|
| 6.1 | Compromise and Settlement Agreement | 19 |
| 6.2 | Dismissal of Pending Adversary Litigation | 19 |

ARTICLE VII   MEANS FOR IMPLEMENTATION OF THE PLAN        19

| | | |
|---|---|---|
| 7.1 | Corporate Action | 19 |
| 7.2 | Vesting of Assets of Avia USA | 20 |
| 7.3 | Vesting of Assets of Avia Mexico | 20 |
| 7.4 | Investments | 20 |
| 7.5 | Payment of Statutory Fees | 20 |
| 7.6 | Closing of the Chapter 11 Case | 21 |
| 7.7 | Release of Liens | 21 |
| 7.8 | Objections to Claims and Interests | 21 |
| 7.9 | Settlement of Claims Objections | 21 |

ARTICLE VIII DISTRIBUTIONS                                                                21

| | | |
|---|---|---|
| 8.1 | Reserve for Administrative Claims | 21 |
| 8.2 | Reserves for Disputed Claims | 22 |
| 8.3 | Delivery of Distributions | 22 |
| 8.4 | Unclaimed Property | 22 |
| 8.5 | Setoffs | 22 |

ARTICLE IX  UNEXPIRED LEASES AND EXECUTORY CONTRACTS        23

ARTICLE X  CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN                                                                23

| | | |
|---|---|---|
| 10.1 | Conditions to Effectiveness of the Plan | 23 |
| 10.2 | Waiver of Conditions | 24 |
| 10.3 | Effect of Failure of Condition | 24 |

10.4    Notice of Confirmation    24

ARTICLE XI  RETENTION OF JURISDICTION    24

11.1    Miscellaneous Sections    24
    a.    Injunction, etc    24
    b.    Professional Fees    24
    c.    Certain Priority Claims    25
    d.    Dispute Resolution    25
    e.    Executory Contracts and Unexpired Leases    25
    f.    Actions    25
    g.    General Matters    25
    h.    Plan Modification    25
    i.    Aid Consummation    25
    j.    Protect Property    25
    k.    Abandonment of Property    25
    l.    Estimated Shortfall Under Compromise and Settlement Agreement    25
    m.    Implementation of Confirmation Order    26
    n.    Final Order    26

ARTICLE XII  MISCELLANEOUS PROVISIONS    26

12.1    Pre-Confirmation Modification    26
12.2    Post-Confirmation Immaterial Modification    26
12.3    Withdrawal or Revocation of the Plan    26
12.4    Payment of Statutory Fees and Compliance with Reporting Requirements    26
12.5    Successors and Assigns    26
12.6    Exculpation and Limitation of Liability    26
12.7    Release by Holders of Claims and Interests    27
12.8    Debtors' Release of Certain Claims Previously Asserted Against Musselman    27
12.9    Injunction    27
12.10  Cramdown    28
12.11  Governing Law    28
12.12  Notices    28
12.13  Saturday, Sunday or Legal Holiday    28
12.14  Section 1146 Exemption    28
12.15  Severability    29
12.16  Headings    29

ARTICLE XIII  CONFIRMATION REQUEST    29

<u>INTRODUCTION</u>

Avia Energy Development, LLC ("Avia USA") and Avia De Mexico S. De R.L. De C.V. ("Avia Mexico") (collectively, "Debtors") jointly propose this Debtors' Amended Joint Plan of Reorganization ("Plan") pursuant to section 1121 of the Bankruptcy Code. Reference is made to the Debtors' Amended Joint Disclosure Statement ("Disclosure Statement")[1] for risk factors and a summary and analysis of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan provides for the approval of a Compromise and Settlement Agreement (defined herein) to settle litigation among the Debtors and certain of their major creditors, that the Debtors' assets, primarily consisting of cash, will be transferred to Holders of Allowed Claims in accordance with the terms of the Plan and the priority of claims provisions of the Bankruptcy Code. Except as otherwise provided by order of the Bankruptcy Court, distributions will occur on the Effective Date or as soon thereafter as is practicable. In addition, the Debtors' claims in certain avoidance actions and causes of action will be compromised and dismissed pursuant to that certain Compromise and Settlement Agreement among the Settling Parties (defined below) attached as Exhibit "1" hereto and incorporated herein by reference. Upon the Effective Date, James C. Musselman ("Musselman") will own one hundred percent (100%) of the membership shares of Reorganized Avia USA. In addition, as provided in the Settlement Agreement, confirmation of the Plan shall constitute ratification of the alleged assignment to Carlos F. Navarro ("Navarro") in 2000 of Avia USA's ninety-nine percent (99%) ownership of the membership interests of Avia Mexico, and Musselman shall transfer his individual one percent (1%) ownership interest in Avia Mexico to Navarro. Therefore, upon the Effective Date, Navarro shall be recognized as the sole owner of Reorganized Avia Mexico.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XIII of this Plan, the Debtors expressly reserve the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

ARTICLE I.

DEFINITIONS

1.1  <u>**Scope of Definitions**</u>.  As used in this Plan, the following terms shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2  **"Administrative Claim"** shall mean a Claim under section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, for costs or expenses of administration of these jointly administered Chapter 11 Cases including,

---

[1]      All capitalized terms not defined in this introduction shall have the meanings set forth in Article I of this Plan.

without limitation, any actual and necessary expenses of preserving the Debtors' Estates incurred after the Petition Date, and any and all fees and expenses of Professionals filed under sections 330, 331 or 503 of the Bankruptcy Code.

1.3 **"Administrative Claim Bar Date"** shall have the meaning set forth in sections 3.4 and 3.5 of the Plan.

1.4 **"Administrative Claims Reserve"** shall mean a sum set aside from the Amegy Account to provide for payment of Administrative Claims that have or may be asserted prior to or on the Administrative Claim Bar Date. for payment reimbursement (including Professional Fee Claims) that may be "Allowed", including a reserve for the amounts claimed by the Debtors' former special litigation counsel, Scheef & Stone, LLP, which filed an application seeking to be paid $288,532.10 and the Debtors' proposed Mexican special counsel Santos - Elizondo - Cantú - Rivera - González - de la Garza - Mendoza S.C. currently estimated to be approximately $23,000.00. Provided that the Court approves the Debtors' motion for Musselman to provide a supplemental $200,000 retainer to Marvin Mohney as the Debtors' general bankruptcy counsel, Mohney will agree to look solely to the retainer for payment of his "allowed" professional administrative fee claim, subject to application and allowance by the Court. If the supplemental retainer for Mohney is not approved, the Administrative Claims Reserve also will include an amount for Mohney's administrative fee claim, currently estimated to be approximately $250,000. The Debtors and Musselman reserve the right to object to any and all administrative expense claims, including asserting counterclaims.

1.5 **"Affiliate"** means any Person that is an "affiliate" of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

1.6 **"Allowed Claim"** or **"Allowed [    ] Claim"** shall mean: (a) any Claim, proof of which is/was filed with the Bankruptcy Court on or before the date designated by the Bankruptcy Court as the last date(s) for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending, or (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan. In accordance with section 502(d) of the Bankruptcy Code, a Claim held by any party that is subject to an Avoidance Action shall not be an Allowed Claim until such time as the avoidable transfer is returned, a final determination is made by the Bankruptcy Court that no avoidable transfer exists, or an agreement or settlement is reached and approved between the Debtors and any party that is subject to an Avoidance Action.

1.7 **"Amegy Account"** shall mean the Cash held at Amegy Bank of Texas, P.O. Box 27459, Houston, TX 77227-7459 in account number 331768 styled Avia de Mexico S. de R.L. de C.V., Debtor-In-Possession, with a balance of $ 2,005,701.85 as of May 31, 2007.

1.7    **"Avoidance Actions"** shall mean any and all Claims and Causes of Action of any of the Debtors' Estates as of the Effective Date, arising under Chapter 5 of the Bankruptcy Code, including claims pursuant to section 544 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

1.8    **"Avoidance Litigation"** shall mean adversary case number 06-03122 filed January 10, 2006 styled Avia Energy Development, LLC, Avia de Mexico S. de R.L. de C.V. and James C. Musselman, Plaintiffs v. Carlos Francisco Navarro, Michael Farmar, Jack M. Lafield and David W. Elrod, Defendants, pursuant to which the Debtors seek affirmative relief, including without limitation, the following: (a) Avoidance of Transfers and Obligations Under Rule 11 Agreement as fraudulent conveyances;   (b) Avoidance of Jack Lafield's Alleged Transfer of Avia USA's 99% Ownership Interest in Avia Mexico to Carlos Navarro as a Fraudulent Conveyance Under Texas State Law; (c) Avoidance of Transfers Made Pursuant to Rule 11 Agreement as Insider Preferences; (d) Turnover of the Amegy Account Funds and the Bancomer Funds to Avia; (e) Declaratory Judgment that the Debtors own the Amegy Account Funds and the Bancomer Funds; (f) Declaratory Judgment That Carlos Navarro is Responsible for Claims Based on the 'Pagares' he issued in Mexico; (g) Injunction to Require Navarro and Lafield to Cooperate to Turnover All Accounts at Bancomer and at Amegy to the Bankruptcy Estate and to Rescind any Power of Attorney Given to Sampogna, De Leon, and Gomez; (h) Conversion (Against Navarro and Lafield – also against Elrod for $25,000 Retainer); (i) Civil Conspiracy ; (j) Breach of Fiduciary Duty by Lafield and Navarro; and (k) Objections to Proofs of Claims of Navarro, Lafield and Farmar; and Equitable Subordination of All Claims and Interests of Navarro, Lafield and Farmar Against the Debtors.

1.9    **"Ballot"** shall mean the form or forms that will be distributed along with the Disclosure Statement to Holders of Allowed Claims in Classes that are Impaired under the Plan and entitled to vote, which the Holders of Impaired Claims may use to vote to accept or reject the Plan.

1.10    **"Bancomer"** shall mean BBVA Bancomer, S.A., Institucion de Banca Multiple, Grupo Financiero BBVA Bancomer, its affiliates, representatives and employees.

1.11    **"Bancomer Litigation"** shall mean adversary case number 05-03620 filed August 18, 2005 styled Avia Energy Development, LLC and Avia Mexico S. de R.L. de C.V., Plaintiffs, vs. BBVA Bancomer, S.A., Institucion de Banca Multiple, Grupo Financiero BBVA Bancomer, and Carlos Alberto Gomez Ramos, pursuant to which the Debtors seek relief, including without limitation: (a) accounting; (b) turnover; (c) declaratory judgment, and (d) injunctive relief.

1.12    **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 - 1330, as now in effect.

1.13    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

1.14 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective August 1, 1996 in accordance with the provisions of 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court, as now in effect.

1.15 **"Bar Date"** shall mean December 27, 2005, the deadline for non-governmental creditors to file a proof of Claim to the extent required; provided, however, pursuant to Bankruptcy Rule 3003(c)(2), any creditor whose prepetition Claim was not scheduled by the Debtor or was scheduled as disputed, contingent, or unliquidated, and who failed to file a proof of Claim on or before the Bar Date may not be treated as a creditor with respect to that prepetition Claim for purposes of voting on the Plan or receiving a distribution thereunder.

1.16 **"Business Day"** shall mean any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.17 **"Cash"** shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and/or the Government of Mexico, and certificates of deposit issued by banks.

1.18 **"Causes of Action"** mean all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Avoidance Actions), whether based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, that (i) are or may be pending or otherwise exist prior to or following the Effective Date, (ii) may be instituted by the Debtors after the Effective Date against any Person, or (iii) claims that may or could have been pursued on behalf of the Debtors or the Debtors' Estates.

1.19 **"Chapter 11 Cases"** shall mean the above-captioned jointly administered chapter 11 cases pending for the Debtors' Estates.

1.20 **"Claim"** shall mean a claim against any Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code, or any portion thereof.

1.21 **"Class"** shall mean a category of Holders of Claims or Interests, which are substantially similar in nature to each other, as classified pursuant to Article IV of the Plan.

1.22 **"Compromise And Settlement Agreement"** shall mean that Compromise and Settlement Agreement and Mutual Release attached to the Debtors' Motion for Approval of a Compromise Under Bankruptcy Rule 9019 filed on April 24, 2007.

1.23 **"Confirmation"** shall mean the entry of the Confirmation Order on the docket in the Chapter 11 Cases.

1.24 **"Confirmation Date"** shall mean the date of entry of an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.25 **"Confirmation Hearing"** shall mean the hearing to confirm the Plan.

1.26 **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.27 **"Creditor"** shall mean any Person or Entity having a Claim against the Debtors' Estates, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' Estates of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.28 **"Debtors"** or **"Debtors' Estates"** shall mean Avia USA and Avia Mexico, jointly, unless otherwise specified.

1.29 **"Disclosure Statement"** shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.30 **"Disputed Claim"** or **"Disputed [ ] Claim"** shall mean any Filed Claim (i) as to which an objection has been interposed as of the deadline fixed by the Plan, as may be extended in accordance with the Plan and (ii) which has not been allowed or disallowed pursuant to a Final Order, or any Claim that is not a Filed Claim that is listed as disputed, contingent or unliquidated on the Schedules filed by the Debtors in their bankruptcy cases.

1.31 **"Disputed Claims Reserve"** means a reserve established to receive and hold, in a segregated account to be established by the Debtors, Cash in an amount equal to the aggregate of amounts thereof or such other amounts as the parties may agree or the Bankruptcy Court may order, if any, that would have been distributed on the Effective Date on account of such Filed Disputed Claims against the Debtor or their Property (had they been Allowed Claims at that time).

1.32 **"Effective Date"** shall mean the date on which each of the conditions set forth in section 10.1 of the Plan have been satisfied or waived (if waivable).

1.33 **"Entity"** shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.34 **"Estates"** shall mean the estates created in the Chapter 11 Cases for the Debtors pursuant to section 541 of the Bankruptcy Code.

1.35 **"Fee Claim"** means a Claim under sections 328, 330(a) or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date.

1.36 **"Fee Claim Bar Date"** shall have the meaning set forth in section 3.5 of the Plan.

1.37 **"File," "Filed,"** or **"Filing"** shall mean file, filed or filing with the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties.

1.38    **"Final Order"** shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, which has not been stayed.

1.39    **"General Unsecured Claim"** shall mean any Claim against the Debtors' Estates, other than an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

1.40    **"Gomez 'Amparo' Litigation"** shall mean that certain litigation pending in Monterrey, Mexico wherein the Debtors are maintaining a constitutional challenge to reverse for insufficiency of service a default judgment and garnishment by attorney Carlos Gomez in late 2003 of approximately $320,000 of the Debtors' funds at Bancomer in Monterrey, Mexico.

1.41    **"Holder"** means an Entity holding a Claim, including any authorized agent who has executed and delivered a Ballot in accordance with applicable voting instructions.

1.42    **"Impaired"** shall have the meaning set forth in section 1124 of the Bankruptcy Code.

1.43    **"Interest"** shall mean, with respect to the Debtors' Estates, any equity interest therein as defined in section 101(16) of the Bankruptcy Code.  Interests also include, without limitation, Claims arising from rescission of a purchase or sale on an Interest, for damages arising from the purchase or sale of an Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such an Interest.

1.44    **"Other Priority Claim"** shall mean any Claim against the Debtors' Estates other than an Administrative Claim or Priority Tax Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.45    **"Pagares"** shall mean those instruments governed by the laws of Mexico issued by Carlos Navarro, or purportedly issued by Carlos Navarro, purportedly on behalf of Avia Mexico to several persons, known and unknown, purporting to evidence Claims against Avia Mexico.

1.46    **"Person"** shall mean a natural person, or any legal Entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal Entity.

1.47    **"Petition Date"** shall mean August 18, 2005, the date upon which the Debtors filed their petitions under chapter 11 of the Bankruptcy Code.

1.48    **"Plan"** or "**Plan of Reorganization"** shall mean this Chapter 11 Debtors' Joint Plan of Reorganization, all exhibits hereto and any amendments or modifications hereof

1.49    **"Priority Tax Claim"** shall mean any Claim for taxes against the Debtors' Estate, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.50     **"Proceeds"** shall mean the Cash received from the sale, transfer, or collection of Property (including, but not limited to, the Causes of Action) or the conversion of such Property to Cash, or in some other manner as contemplated in this Plan, whether received before or after the Effective Date.

1.51     **"Professionals"** shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with section 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.52     **"Property"** means all property of the Debtors' Estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors, or acquired by the Debtors' Estates, as defined in section 541 of the Bankruptcy Code.

1.53     **"Pro Rata"** means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.54     **"Rejection Claim"** means a Claim for damages resulting from the rejection of an executory contract by the Debtors.

1.55     **"Remaining Assets"** means any and all Cash, assets, or other Property of the Debtors' Estates of every kind and character.

1.56     **"Removed Litigation"** shall mean adversary case number 05-03658 originally filed as Cause No. 03-3314-K on April 14, 2003 in the 192nd Judicial District Court of Dallas County, Texas styled *Avia Energy Development, LLC, Avia de Mexico S. de R.L. de C.V. and James C. Musselman, Plaintiffs, and Thomas O. Hicks and Jack D. Furst, Intervenors, v. Carlos Francisco Navarro and Michael Farmar, Defendants and Third-Party Plaintiffs v. Jack Lafield and John Hughett, Third-Party Defendants,* which was removed and re-filed herein on September 22, 2005 pursuant to which the Plaintiffs seek affirmative relief, including without limitation, the following: (a) Breach of Fiduciary Duties Against Navarro; (b) Fraud and Misrepresentation Against Navarro; (c) Conversion Against Navarro and Farmar; (d) Civil Conspiracy Against Navarro and Farmar; (e) Texas Theft Liability Act Against Navarro and Farmar; (f) Declaratory Judgment Against Navarro and Farmar; and (g) Actual and Exemplary Damages Against Navarro and Farmar, and Attorney's Fees.

1.57     **"Rule 11 Agreement"** means the agreement announced on the record in state court on April 13, 2004 by the parties to the Removed Litigation which has been the subject of dispute in the Bankruptcy Cases.

1.58     **"Schedules"** shall mean the Debtors' Schedules of Assets and Liabilities filed in the Chapter 11 Cases pursuant to Bankruptcy Rule 1007, as they may be amended from time to time.

1.59 **"Secured Claim"** shall mean all or a portion of a debt existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the assets of the Debtors securing such debt.

1.60 **"Settling Parties"** shall mean the signatory parties to the Compromise and Settlement Agreement.

1.61 **"Unimpaired"** shall mean any Claim or Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

1.62 **"Voting Deadline"** shall mean the deadline established by Order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

1.63 All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

1.64 Unless otherwise specified herein, any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

1.65 The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

1.66 In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

ARTICLE II.

THE DEBTORS' PLAN

2.1 The Plan provides for approval of the Compromise and Settlement Agreement among the Settling Parties and for the liquidation and distribution of the Property of the Debtors' Estates to all Holders of Allowed Claims and Interests, in accordance with the priorities under the Bankruptcy Code, cancellation of the equity ownership interests of all persons in Avia USA and re-issuance of new ownership interests to Musselman as consideration for his contributions to funding the Plan as further described in section 5.7 hereof. The Plan further provides that pursuant to the terms and conditions of the Compromise and Settlement Agreement, Navarro shall be recognized as the one hundred percent ownership of Avia Mexico upon the Effective Date.

The Debtors each assert ownership interests in their combined assets. All such assets will be administered and distributed in accordance with this Joint Plan. In addition, all Creditors have either asserted Claims against the Debtors jointly, or their claims have been scheduled by each of the Debtors as joint obligations. Accordingly, the Plan provides that the assets of the Debtors' Estates shall be consolidated, and for all Allowed Unsecured Claims to receive Pro Rata distributions in accordance with their priorities recognized under the Bankruptcy Code.

# ARTICLE III.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND BAR DATES

3.1     <u>Administrative Claims and Priority Tax Claims are not classified in this Plan</u>. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article III of the Plan shall be in full and complete satisfaction, settlement, release and discharge of such Claims.   The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

3.2     <u>Treatment of Administrative Claims</u>.   Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon other agreed terms, or (b) such lesser amount as the Holder of an Allowed Administrative Claim and the Debtors might otherwise agree.

3.3     <u>Treatment of Priority Tax Claims</u>.   Each Holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon other agreed terms, or (b) such lesser amount as the Holder of an Allowed Priority Tax Claim and the Chapter 11 Debtors might otherwise agree.   Interest shall only be paid on account of such Allowed Priority Tax Claim as permitted by sections 506(b) and 1129(b)(2)(A)(i)(II) of the Bankruptcy Code.   The Chapter 11 Debtors shall seek to subordinate any Claim for any fine, penalty, forfeiture or damages arising with respect thereto or in connection with an Allowed Priority Tax Claim to the extent that such fine, penalty, forfeiture or damages is not compensation for actual pecuniary loss suffered by the Holder of such Claim.

3.4     <u>Bar Date for Administrative Claims</u>.   Requests for payment of Administrative Claims (except for Fee Claims with respect to the Debtors' Professionals) must have been filed and served on the Debtors, their counsel and the United States Trustee, no later than _____, 2007, at 4:00 p.m. (Central) (the "<u>Administrative Claim Bar Date</u>").   Any Person that is or was required to file and serve a request for payment of an Administrative Claim and failed to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Holders of Administrative Claims, who are not the Debtors' Professionals, shall also be required to file fee applications in accordance with the Bankruptcy Code and Bankruptcy Rules within fifteen (15) days after the Administrative Claim Bar Date.

3.5     <u>Bar Date for Administrative Claims of Debtors' Professionals</u>.     For Administrative Claims of the Debtors' Professionals, applications for compensation for fees and reimbursement of such parties' expenses shall be filed no later than forty-five (45) days after the Effective Date, or such later date as the Bankruptcy Court approves.

# ARTICLE IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

4.1     A Claim (or Interest) is classified in a particular Class only to the extent that the Claim (or Interest) qualifies within the description of that Class and is classified in another Class or Classes to the extent that any remainder of the Claim (or Interest) qualifies within the description of such other Class or Classes.  A Claim (or Interest) is classified in a particular Class only to the extent that the Claim (or Interest) is an Allowed Claim (or an Allowed Interest) in that Class and has not been paid, released or otherwise satisfied before the closing of the Chapter 11 Case.

4.2     Administrative Claims and Priority Tax Claims are unclassified.  For purposes of this Plan, all other Claims and Interests are classified as follows:

4.3     Class 1 Claims shall consist of all Other Priority Claims.

4.4     Class 2 Claims shall consist of all General Unsecured Claims, unless separately classified herein.

4.5     The Class 3 Claim shall consist of the Claim of Michael Farmar, including any potential claims that may be based upon the avoidance of the transfers at issue in the Avoidance Litigation or based upon rejection of the Rule 11 Agreement.

4.6     The Class 4 Claim shall consist of the Claim of Carlos Navarro, including any potential claims of Navarro and/or his counsel David Elrod and Elrod, PLLC that may be based upon the avoidance of the transfers at issue in the Avoidance Litigation or based upon rejection of the Rule 11 Agreement.

4.7     The Class 5 Claim shall consist of the Claim of Jack Lafield, including any potential claims that may be based upon the avoidance of the transfers at issue in the Avoidance Litigation or based upon rejection of the Rule 11 Agreement.

4.8     The Class 6 Claim shall consist of the Claim of James C. Musselman.

4.9      Class 7 Claims shall consist of all Claims arising from Debtors' rejection of the Rule 11 Agreement, if any, subject to any objections or offsets thereto, unless otherwise classified herein.

4.10      Class 8 Claim shall consist of the claims and contractual rights of Thomas Hicks and Jack Furst.

4.11      Class 9 Claims shall consist of the disputed secured Claim of Carlos Alberto Gomez Ramos.

4.12      Class 10 Claims shall consist of the intercompany claims between Avia USA and Avia Mexico.

4.13    Class 11 Claims shall consist of all Claims not otherwise classified herein, including any claims by holders of "Pagares" issued by Carlos Navarro, unless separately classified herein.

4.14    Class 12 Interests shall consist of all ownership interests in Avia USA.

4.15    Class 13 Interests shall consist of all ownership interests in Avia Mexico.

ARTICLE V.

TREATMENT OF CLAIMS AND INTERESTS

5.1    <u>Miscellaneous</u>.  The treatment of and consideration to be received by Holders of Allowed Claims and Interests pursuant to this Article V of the Plan shall be in full and complete satisfaction, settlement, release, discharge of and in exchange for such Claims and Interests.  The Debtors' obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.

5.2    <u>Treatment of Class 1 Claims - Other Priority Claims</u>.  Class 1 Claims are Unimpaired.  The legal, contractual, and equitable rights of each Allowed Class 1 Claim shall be left unaltered.  Payment in full in Cash shall be made to the Holders of Allowed Class 1 Claims as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or paid upon other agreed terms.  The Holders of Claims in this Class are <u>not</u> entitled to vote.

5.3    <u>Treatment of Class 2 [General Unsecured] Claims</u>.  Holders of Class 2 Claims are Impaired and entitled to vote.  The Holders of Allowed Class 2 [General Unsecured] Claims against the Debtors' Estates shall be entitled to receive a Pro Rata distribution with the holder of the Class 7 claims and the Class 8 claim from (a) the Debtors' portion of Cash in the Amegy Bank Account (approximately $1.1 million) as allocated per the Compromise and Settlement Agreement, plus (b) the amount of all deposit accounts in the Debtors' names at Bancomer (approximately $2,000), plus (c) $20,000 to be contributed by Jack Lafield conditioned upon the Court's approval of the Plan and the attached Settlement Agreement; less (d) the amount of the Administrative Claims Reserve.

5.4    <u>Treatment of Class 3 Claim of Michael Farmar</u>.  The Holder of the Class 3 Claim is Impaired and entitled to vote.  Farmar filed a claim in the amount of $2,760,000.00 based upon the Rule 11 Agreement, and, alternatively as the alleged successor to Gaz Natural de Miguel, Inc. under a promissory note from Avia USA.   Farmar is a defendant in the Removed Litigation and in the Avoidance Litigation wherein the Debtors have requested that certain alleged transfers be avoided, an award of damages and objected to the Class 3 Claim.   The Debtors also have asserted that the Class 3 Claim should be subordinated to the Holders of other Allowed Claims.   Farmar, in turn, has filed counterclaims and third party claims, requested dismissal of the bankruptcy cases, and he has sought the enforcement of the Rule 11 Agreement, and he has asserted an ownership interest in funds contained in the Amegy Bank Account.

Pursuant to the terms of the Compromise and Settlement Agreement attached hereto, subject to the Bankruptcy Court's approval, the Debtors will agree that on the Effective Date and

in full satisfaction of all claims by Farmar and Calpine Corporation, the Class 3 Claim shall receive the treatment provided in the Compromise and Settlement Agreement attached hereto, including recognition that the Class 3 Claimant owns and is entitled to receive $635,000.00 of the funds in the Amegy Bank Account, and to exchange mutual releases from each of the Settling Parties identified therein.

5.5     Treatment of Class 4 Claim of Carlos Navarro.  The Class 4 Claim is Impaired and entitled to vote.   Navarro also is a defendant in the Removed Litigation and in the Avoidance Litigation wherein the Debtors have objected to the Class 4 Claim that was filed in the amount of $388,278.71 based upon the Rule 11 Agreement.  In the Avoidance Litigation the Debtors have requested that certain alleged transfers to Navarro and/or his counsel be avoided, an award of damages and objected to the Class 4 Claim.  The Debtors also have asserted that the Class 4 Claim should be subordinated to the Holders of other Allowed Claims.   Navarro, in turn, has filed counterclaims and third party claims, requested dismissal of the bankruptcy cases, and he has sought the enforcement of the Rule 11 Agreement, and he has asserted an ownership interest in funds contained in the Amegy Bank Account and a right to be recognized as the owner of Avia Mexico and 50% owner of Avia USA.

Pursuant to the terms of the Compromise and Settlement Agreement attached hereto, subject to the Bankruptcy Court's approval, the Debtors will agree that on the Effective Date and in full satisfaction of all claims by Navarro, the Class 4 Claim shall receive the treatment provided in the Compromise and Settlement Agreement attached hereto, including recognition that the Class 4 Claimant owns and is entitled to receive $265,000.00 of the funds in the Amegy Bank Account, a 31.25 % ownership interest in any funds recovered from the Gomez Litigation, 100% ownership of Reorganized Avia Mexico, and to exchange mutual releases with each of the Settling Parties identified therein.  Reorganized Avia Mexico will own any Avia Mexico claims not released in accordance with the Compromise and Settlement Agreement.

5.6     Treatment of Class 5 Claim of Jack Lafield.  The Holder of the Class 5 Claim is Impaired and entitled to vote.   Lafield is a defendant in the Removed Litigation and in the Avoidance Litigation wherein the Debtors have objected to the Class 5 Claim that was filed in an unliquidated amount based upon the Rule 11 Agreement to which he was party.  The Debtors also have requested that certain alleged transfers to Lafield be avoided, and have asserted damages claims and alleged that the Class 5 Claim should be subordinated to the Holders of other Allowed Claims.   Lafield, in turn, has filed a motion to dismiss the bankruptcy cases and counterclaims against Musselman.

Pursuant to the terms of the Compromise and Settlement Agreement attached hereto, subject to the Bankruptcy Court's approval, the Debtors agree that on the Effective Date and in full satisfaction of all claims by Lafield, the Class 5 Claim will receive the treatment provided in the Compromise and Settlement Agreement attached hereto, including Lafield's agreement to pay $20,000 to the Bankruptcy Estates, and to exchange mutual releases with each of the Settling Parties identified therein.

5.7     Treatment of Class 6 Claim of James C. Musselman.  The Holder of the Class 6 Claim is Impaired and entitled to vote.  The Holder of the Class 6 Claim is a party plaintiff in the Removed Litigation and in the Avoidance Litigation.   Musselman, who is the Debtors'

representative, has filed a claim in the amount of $ 1,574,123.76 based upon prepetition loans and advances to the Debtors. Musselman also holds administrative claims totaling $3,000.00 for loans made to enable each of the Debtors to pay its quarterly fees to the United States Trustee.

Subject to the Bankruptcy Court's approval of this Plan and the Compromise and Settlement Agreement, Musselman has agreed to assign his one percent (1%) ownership interest in Avia Mexico to Navarro. Musselman further has agreed to fund an escrow account sufficient to pay any deficiency between the pro rata distribution to the Class 8 Claimant from the bankruptcy estates and the $800,000.00 amount payable to the Class 8 Claimant under the Compromise and Settlement Agreement. Also, subject to allowance and the Court's approval, Musselman has agreed to provide a post-petition retainer of $200,000.00 to secure the administrative fee claim of the Debtors' general bankruptcy counsel. In the event that the allowed amount of administrative claims is less than the Administrative Claims Reserve, the excess shall be refunded to Musselman in exchange for the consideration provided to the Debtors' estates.

Pursuant to the terms of the Compromise and Settlement Agreement attached hereto, the Debtors agree that on the Effective Date and in full satisfaction of all claims by Musselman, the Class 6 Claim will receive the treatment provided in the Compromise and Settlement Agreement attached hereto, including recognition that the Class 6 Claimant owns 100% of Reorganized Avia USA, which is entitled to receive 68.75 % of the proceeds resulting from the Gomez Litigation, and mutual releases from each of the Settling Parties identified therein.

Entry of the Confirmation Order further shall constitute a release of Musselman from liability for any and all claims, known and unknown, related to the Debtors, including, but not limited to, those claims previously asserted against him in Mexico by any persons purporting to act for Avia Mexico, including Innocencio De Leon and Carlos Gomez.

5.8    Treatment of Class 7 Claims of persons not otherwise treated that arise upon Debtors' rejection of the Rule 11 Agreement.  Holders of Class 7 Claims are Impaired. Unless they are separately classified herein, the Holders of any Allowed Class 7 Claims will be entitled to receive a pro rata distribution with the Holders of Allowed Claims in Classes 2 and 8 upon the later of the Effective Date, and ten days after such Claim is Allowed by Final Order, whichever is later. The Debtors believe that there are no creditors in this Class.

5.9    Treatment of Class 8 Claims of Hicks & Furst.  The Holders of the Class 8 Claims are Impaired and entitled to vote. Hicks & Furst has filed a proof of claim in the amount of $6,000,880.11, which claim shall be deemed allowed upon approval of the Settlement Agreement and upon Confirmation of the Plan. The Holder of the Allowed Class 8 Claim will be entitled to receive a pro rata distribution on the Effective Date, or as soon as practicable thereafter, from the Debtors with the Holders of Allowed Unsecured Claims in Classes 2 and 7.

In addition, the Holder of the Class 8 Claim is a party to the Compromise and Settlement Agreement and the Removed Litigation. As provided in the Compromise and Settlement Agreement, Musselman shall fund an escrow account in an amount reasonably acceptable to Hicks & Furst to assure that the Holder of the Class 8 Claim will receive a total payment of

$800,000 including the distributions from the Estates, in exchange for mutual releases of all claims related to the Debtors and their operations.

5.10    Treatment of Class 9 [Secured] Claim - Claim of Carlos Alberto Gomez Ramos. The Holder of the Class 9 Claim is Impaired.  In late 2003, the Holder of the Class 9 [Secured] Claim garnished approximately $320,000 of the Debtors' funds at Bancomer in Monterrey, Mexico and received a default judgment based on a 'Pagare' issued to him by Carlos Navarro purporting to act for Avia Mexico.  In the Gomez 'Amparo' Litigation, Avia Mexico obtained a judgment in December 2006 setting aside the default judgment and garnishment for insufficiency of service, and the Class 9 Claimant has sought reconsideration of that ruling.

As provided in the Compromise and Settlement Agreement, upon the Effective Date, Navarro and Musselman, acting for Reorganized Avia Mexico and Reorganized Avia USA, respectively, jointly will continue to seek to resolve the Gomez 'Amparo' Litigation in Mexico. Any recovery by the Class 9 Claimant shall be limited to the funds garnished at Bancomer, as allowed by the Mexican Courts, or as jointly negotiated and approved by Musselman and Navarro.  Any recovery from the Debtors' interests in those funds shall be allocated as provided in the Compromise and Settlement Agreement (i.e., 31.25 % to Reorganized Avia de Mexico and 68.75 % to Reorganized Avia USA).  The Class 9 Claimant retains his secured claim, if any, in the funds subject to the Gomez Amparo Litigation.  The Class 9 Claim is scheduled by the Debtors as "Disputed", and the Class 9 Claimant did not file a proof of claim.  Accordingly, the holder of the Class 9 Claim is not entitled to vote.

5.11    Treatment of Class 10 Claim – Intercompany Claims.  The Holders of the Class 10 Claims are Impaired.  The Debtors have agreed that upon confirmation of their joint Plan, all intercompany claims shall be waived, including the intercompany advances from Avia USA to Avia Mexico totaling $2,201,366.14.  On the Effective Date, the Class 10 Claims, if any, shall be deemed canceled, null and void and of no force and effect.  Accordingly, the Holders of Class 10 Claims are deemed to reject the Plan and are not entitled to vote.

5.12    Treatment of Class 11 Claims by holders of "Pagares" issued by Carlos Navarro, unless separately classified herein.  The Holders of Class 11 Claims are Impaired.  Subject to the provisions of this Plan and the Confirmation Order, each Holder of a Class 11 Claim that has received notice of the Debtors' bankruptcy cases and not filed a claim, shall receive no distribution from the Debtors' Estates.  Accordingly, the Holders of Class 10 Claims are deemed to reject the Plan and are not entitled to vote.

5.13    Treatment of Class 12 Ownership Interests in Avia USA.  Holders of Class 11 Interests are Impaired. The Holders of Class 12 Interests shall receive no distribution on account of their ownership interests. On the Effective Date, all Class 12 Interests shall be deemed canceled, null and void and of no force and effect.  Accordingly, the Holders of Class 12 Interests are deemed to reject the Plan and are not entitled to vote.

5.14    Treatment of Class 13 Ownership Interests in Avia Mexico.  Holders of the Class 13 Interests are Impaired and entitled to vote.  As provided in the Settlement Agreement, confirmation of the Plan shall constitute a ratification of Lafield's alleged assignment to Navarro in 2000 of Avia USA's ninety-nine percent (99%) ownership of the membership interests of

Avia Mexico, and Musselman shall transfer his individual one percent (1%) ownership interest to Navarro. Therefore, upon the Effective Date, Navarro shall be recognized as the sole owner of Reorganized Avia Mexico.

5.15    Separate Classes and Treatment. No Class, member of any Class or Holder of any Claim shall be entitled to or receive Cash, Securities, or other Property allocated for distribution to any other Class or to a Holder of a Claim, except as expressly specified in the Plan. The Debtors shall not distribute any Cash, Securities, or other Property allocated to a Class, member of any Class or a Holder of a Claim or Interest to any other Class or member thereof or Holder of a Claim or Interest, except as expressly specified in the Plan or the Confirmation Order.

5.16    Claims (or Interests) May Be in More Than One Class. A Claim (or Interest) is part of a particular Class only to the extent that the Claim (or Interest) qualifies within the definition of that Class and such Claim (or Interest) is part of a different Class to the extent that the remainder of the Claim (or Interest) qualifies within the description of a different Class.

## ARTICLE VI.

## INCORPORATION OF TERMS OF COMPROMISE AND SETTLEMENT AGREEMENT

6.1    Terms of Compromise and Settlement Agreement. On April 24, 2007, the Debtors filed a motion to approve the terms of the Compromise and Settlement Agreement among the Settling Parties, which is attached as Exhibit "1" hereto and incorporated herein by reference. Approval of the Compromise and Settlement Agreement, and incorporation of its terms, is a condition precedent to Confirmation of the Plan. Confirmation of the Plan also is a condition precedent to approval of the Compromise and Settlement Agreement. Interested Parties are referred to the Compromise and Settlement Agreement for a precise understanding of its terms.

6.2    Dismissal of Pending Adversary Litigation. As provided in the Settlement Agreement, upon confirmation of the Plan the Avoidance Litigation and the Removed Litigation each shall be dismissed with prejudice, and the Bancomer Litigation shall be dismissed without prejudice.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    Corporate Action. On the Effective Date, the transfers contemplated by this Article shall be deemed authorized and approved in all respects. On the Effective Date, the matters provided under the Plan involving the corporate structure of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable state laws without any requirement of further action by the stockholders or directors of the Debtors. On the Effective Date, Musselman as the Debtors' representative shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and the Disclosure Statement. The transfer and assignment of any Remaining Assets of the Debtors, on or after the Effective Date, shall be made pursuant to the

terms of this Plan and, accordingly, to the fullest extent permitted by law, shall be exempt from all stamp taxes and similar taxes within the meaning of section 1146(c) of the Bankruptcy Code.

7.2     Vesting of Assets of Avia USA.  On the Effective Date, except as separately provided herein, all right, title, and interests in and to the Property of Avia USA shall vest in Reorganized Avia USA free and clear of any and all Liens and other interests.  The Plan, subject to the terms and conditions of the Compromise and Settlement Agreement, preserves and assigns to Reorganized Avia USA all claims and rights of Avia USA against various third parties, and avoidance actions against various third parties under sections 549 and 550 of the Bankruptcy Code against Creditors, Holders of Interests, and other recipients of transfers by the Debtor prior to the Petition Date.  Such claims and actions may also be a basis for disallowance of the Claims and Interests under section 502(d) or section 553 of the Bankruptcy Code.  THE DEBTORS' AMENDED SCHEDULES AND STATEMENTS OF FINANCIAL AFFAIRS CONTAIN LISTS OF ALL SUCH TRANSFEREES KNOWN TO THE DEBTOR AT THE TIME IT WAS PREPARED.     EXCEPT AS OTHERWISE PROVIDED THEREIN OR IN THE COMPROMISE AND SETTLEMENT AGREEMENT, THE PLAN RESERVES ALL RIGHTS AND CLAIMS AGAINST PARTIES IN INTEREST, THIRD PARTIES (INCLUDING, BUT NOT LIMITED TO, PRESENT AND FORMER OFFICERS, DIRECTORS, PROFESSIONALS, EMPLOYEES, AND REPRESENTATIVES OF THE DEBTORS), CREDITORS, AND INTEREST HOLDERS, WHETHER OR NOT SUCH PARTIES, CREDITORS, OR INTEREST HOLDERS ARE SPECIFICALLY NAMED IN THE DISCLOSURE STATEMENT, IN THIS PLAN, OR IN THE DEBTORS' STATEMENT OF FINANCIAL AFFAIRS.

7.3     Vesting of Assets of Avia Mexico.  On the Effective Date, except as separately provided herein, all right, title, and interests in and to the Property of Avia Mexico shall vest in Reorganized Avia Mexico free and clear of any and all Liens and other interests.  The Plan, subject to the Compromise and Settlement Agreement, preserves and assigns to Reorganized Avia Mexico all claims and rights of Avia Mexico against various third parties (other than the Settling Parties and avoidance actions against various third parties under the Bankruptcy Code).  Such claims and actions may also be a basis for disallowance of the Claims and Interests under section 502(d) or section 553 of the Bankruptcy Code.  THE DEBTORS' AMENDED SCHEDULES AND STATEMENTS OF FINANCIAL AFFAIRS CONTAIN LISTS OF ALL SUCH TRANSFEREES KNOWN TO THE DEBTOR AT THE TIME IT WAS PREPARED. EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN THE COMPROMISE AND SETTLEMENT AGREEMENT, THE PLAN RESERVES ALL RIGHTS AND CLAIMS AGAINST PARTIES IN INTEREST, THIRD PARTIES (INCLUDING, BUT NOT LIMITED TO, PRESENT AND FORMER OFFICERS, DIRECTORS, PROFESSIONALS, EMPLOYEES, AND REPRESENTATIVES OF THE DEBTORS), CREDITORS, AND INTEREST HOLDERS, WHETHER OR NOT SUCH PARTIES, CREDITORS, OR INTEREST HOLDERS ARE SPECIFICALLY NAMED IN THE DISCLOSURE STATEMENT, IN THIS PLAN, OR IN THE DEBTORS' STATEMENT OF FINANCIAL AFFAIRS.

7.4     Investments.  All Cash held by the Debtors in any accounts shall be maintained at interest and distributed or reserved as provided herein, or as otherwise permitted by a Final Order of the Bankruptcy Court.  Pending final distribution, the Debtors shall retain such funds in an interest-bearing account.

7.5     Payment of Statutory Fees.  All fees due and payable pursuant to section 1930 of title 28 of the United States Code, including, without limitation, any United States Trustee for quarterly fees incurred pursuant to section 1930(a)(6) of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date, or as soon as reasonably possible thereafter.  Any and all such fees due and payable after the Effective Date shall be the sole and exclusive liability of the Debtors' Estates.  After Confirmation, the Debtors shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) the Case remains open.

7.6     Closing of the Chapter 11 Case.  On the Effective Date, or as soon as thereafter practicable, the Debtors shall file a motion with the Bankruptcy Court to close the Chapter 11 Cases.  All fees due and payable pursuant to section 1930 of title 28 of the United States Code will be paid prior to entry of final decree closing the Debtors' Chapter 11 Cases.

7.7     Release of Liens.  Except as otherwise provided in the Plan or in any contract, instrument, or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the Property of each of the Debtors' Estates shall be released, and all the right, title and interest of any Holder of such mortgages, deeds of trust, liens or other security interests shall revert to the Debtors' Estates.

7.8     Objections to Claims.  Except as otherwise provided in the Compromise and Settlement Agreement, objections to Claims shall be filed with the Bankruptcy Court and served upon each affected Creditor or Interest Holder no later than thirty (30) days after the Effective Date, provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Debtors, with or without notice to Creditors or Interest Holders.  Notwithstanding the foregoing, unless this Plan or an order of the Bankruptcy Court specifically provides for a later date, any proof of claim Filed after the Confirmation Date shall be automatically disallowed as a late filed claim, without any action by the Debtors, unless and until the party filing such Claim obtains the written consent of the Debtors to file such Claim late or obtains an order of the Bankruptcy Court upon notice to the Plan Trustee that permits the late filing of the Claim.

7.9     Settlement of Claims Objections.  Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled or withdrawn.

ARTICLE VIII.

DISTRIBUTIONS

8.1     Reserve for Administrative Claims.  The Debtors shall establish an "Administrative Claims Reserve" for Administrative Claims (including Professional Fee Claims) in the full amounts estimated or claimed by: (a) the Debtors' general bankruptcy counsel, Marvin R. Mohney; (b) the Debtors' former special litigation counsel, Scheef & Stone, LLP; and (c) the Debtors' proposed special counsel in Mexico, Santos - Elizondo - Cantú - Rivera - González - de la Garza - Mendoza S.C. which may be asserted prior to or on the Administrative Claim Bar Date.  No payments or distributions shall be made with respect to such Fee Claims until such Fee

Claims are Allowed by Final Order. The Debtors and Musselman reserve the right to object to all administrative expense claims, including the right to assert counterclaims.

Provided that the Court approves the Debtors' motion for Musselman to provide an additional $200,000 retainer to Marvin Mohney as the Debtors' general bankruptcy counsel, Mohney will agree to look solely to the retainer for payment of his professional administrative fee claim, subject to application and allowance by the Court.

8.2     Reserves for Disputed Claims.   Prior to any distributions to the Holders of Allowed Class 2 [General Unsecured] Claims, the Debtors shall establish and maintain reserves for all Filed Disputed Claims. If, when, and to the extent any such Disputed Claim becomes Allowed by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Debtors to the Claimant in a manner consistent with distributions to similarly situated Allowed Class 2 [General Unsecured] Claims. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved shall be distributed pursuant to the terms of the Plan. No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order.

8.3     Class 3 and Class 4 Claims.   Upon the Effective Date, and pursuant to the terms and conditions of the Compromise and Settlement Agreement, Farmar and Navarro shall be entitled to receive their respective amounts provided in the Compromise and Settlement Agreement.

8.4     Delivery of Distributions.   Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim Filed by such Holders (or at the last known addresses as reflected on the Debtors' books and records or otherwise of such Holders if no proof of Claim is filed, or if the Chapter 11 Debtors have been notified of a change of address, at the address set forth in such notice). 8.5     Unclaimed Property.     If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such unclaimed Property, along with any subsequent distributions to be made in accordance with the Plan, shall be forfeited by such Holder. Distributions to Holders of Allowed Claims that are deemed to be unclaimed property shall be treated as proceeds of Plan Assets and shall be deemed to be the property of Reorganized Avia USA. Distributions unclaimed for a period of ninety (90) days after they have been delivered (or attempted to have been delivered) in accordance with the Plan to the Holders entitled thereto that are intended to be final distributions shall be treated as proceeds of Reorganized USA.

8.6     Setoffs.   Except as otherwise provided for herein, the Debtors may, but shall not be required to, set off against any Claim or Interest and the payments to be made pursuant to this Plan in respect of such Claim or Interest, claims of any nature whatsoever the Debtors' Estate may have against the Creditor or Interest Holder, but neither the failure to do so nor the allowance of a Claim or Interest hereunder shall constitute a waiver or release by the Chapter 11 Debtors or the Debtors' Estates of any Claim or Interest they may have against the Creditor.

## ARTICLE IX.

### UNEXPIRED LEASES AND EXECUTORY CONTRACTS

9.1     Any and all pre-petition leases or executory contracts not previously rejected by order of the Bankruptcy Court, unless specifically assumed pursuant to orders of the Bankruptcy Court prior to the Confirmation Date or the subject of a motion to assume or assume and assign pending on the Confirmation Date, shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date, including, without limitation, the alleged Rule 11 Agreement entered into by the Settling Parties in the Removed Litigation as of April 13, 2004 which Claims shall be treated as provided in the Compromise Settlement Agreement.

9.2     All proofs of claim with respect to claims arising from the rejection of executory contracts or leases, unless another order of the Bankruptcy Court provides for an earlier date, or unless otherwise provided herein, shall be Filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of the Effective Date of the Plan.  All proofs of claim with respect to claims arising from the rejection of executory contracts shall be treated as Class 7 Claims for purposes of a distribution pursuant to the Plan, unless such claim has been separately classified, or until the party asserting such Claim obtains an order of the Bankruptcy Court upon notice to the Debtors that allows the Claims in another Class under the Plan.  Unless otherwise permitted by Final Order and except for Bar Dates established by the Plan, any proof of claim or proof of interest that is not Filed prior to the Confirmation Date (other than those claims arising from the rejection of executory contracts or leases which may be Filed within 30 days after mailing of the notice of entry of Confirmation Order as set forth above) shall automatically be disallowed as a late filed claim, without any action by the Debtors, and the Holder of such Claim shall be forever barred from asserting such Claim or Interest against the Debtors' Estates or Property.

## ARTICLE X.

### CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

10.1     <u>Conditions to Effectiveness of the Plan</u>.  The Plan shall not become effective unless and until each of the following conditions has been satisfied:

(a)     The Bankruptcy Court shall enter the Confirmation Order approving the Compromise and Settlement Agreement and the Plan;

(b)     The Confirmation Order shall be a Final Order;

(c)     Each of the Settling Parties and counsel, as appropriate, shall have executed and delivered the Compromise and Settlement Agreement and the Mutual Release, and the Debtors shall have received Calpine Corporation's written consent;

(d)     Navarro, Farmar and Musselman jointly shall have issued instructions for Amegy Bank to (1) distribute $635,000.00 to Farmar and $265,000.00 to Navarro, (2) funds shall have been received by Farmar and Navarro, and (3) Amegy Bank shall

recognize that Musselman, as the Debtors' representative, has sole signatory authority for the remaining balance of the funds in the Amegy Bank account;

(e)     Lafield shall have paid $20,000.00 to the bankruptcy estates; and

(f)     In accordance with the provisions of the Compromise and Settlement Agreement, Navarro and any other Settling Party, as reasonably necessary, shall have issued instructions to Bancomer to cause all of the Debtors' funds on deposit at Bancomer (excluding the garnished account subject of the Gomez Litigation which is treated elsewhere herein), to be delivered to the Debtors' representative or the Debtors' counsel.

10.2    Waiver of Conditions.  The Chapter 11 Debtors, without notice or authorization of the Bankruptcy Court, may waive the condition set forth in section 10.1(b) above.  The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

10.3    Effect of Failure of Condition.  In the event that the condition specified in section 10.1(b) of the Plan has not occurred or been waived on or before thirty (30) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by the Debtors, or any party in interest and an opportunity for parties in interest to be heard.

10.4    Notice of Confirmation.  Notice of entry of Confirmation Order and Effective Date will be provided as required by Bankruptcy Rule 3020(c)(2).

ARTICLE XI.

RETENTION OF JURISDICTION

11.1    Miscellaneous Sections.  Following the Effective Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Debtors and the final decree has been entered closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

a.      Injunction, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity;

b.      Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, as provided for in the Plan;

c.     <u>Certain Priority Claims</u>. To determine the allowance and classification of any Priority Tax Claims, Other Priority Claims, Administrative Claims or any request for payment of an Administrative Claim;

d.     <u>Dispute Resolution</u>. To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder, including, without limitation, any dispute concerning payment of professional fees and expenses;

e.     <u>Executory Contracts and Unexpired Leases</u>. To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases pending as of the Confirmation Date, and to determine the allowance of any Rejection Claims;

f.     <u>Actions</u>. To determine all applications, motions, adversary proceedings, contested matters, actions (including the sale of any Plan assets, including Causes of Action), and any other litigated matters instituted in the Chapter 11 Case by or on behalf of the Debtors' Estates, Chapter 11 Debtors, including, but not limited to, the Causes of Action commenced by the Chapter 11 Debtors and any remands;

g.     <u>General Matters</u>. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code;

h.     <u>Plan Modification</u>. To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

i.     <u>Aid Consummation</u>. To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

j.     <u>Protect Property</u>. To protect the Property of the Debtors' Estates from adverse Claims or Interests or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such Property based upon the terms and provisions of this Plan or to determine a purchaser's exclusive ownership of claims and causes of actions retained under this Plan;

k.     <u>Abandonment of Property</u>. To hear and determine matters pertaining to abandonment of Property of the Estates;

l.     <u>Estimated Shortfall under Compromise and Settlement Agreement.</u> To hear and determine all proceedings and matters related to the Estimated Shortfall, as such term is used in Paragraph 5 of the Settlement Agreement;

m.      Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

n.      Final Order.  To enter a final decree closing the Chapter 11 Case.

ARTICLE XII.

MISCELLANEOUS PROVISIONS

12.1    Pre-Confirmation Modification.  On notice to and opportunity to be heard by the United States Trustee and other interested parties, the Plan may be altered, amended or modified by the Chapter 11 Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code provided that such modification shall not alter the provisions of the Compromise and Settlement Agreement without the Settling Parties' written consent.

12.2    Post-Confirmation Immaterial Modification.  After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Chapter 11 Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect of omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan and such proceedings do not materially adversely affect the treatment of Holders of the Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

12.3    Withdrawal or Revocation of the Plan.  Subject to the terms of the Compromise and Settlement Agreement, the Chapter 11 Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Chapter 11 Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void.

12.4    Payment of Statutory Fees and Compliance with Reporting Requirements.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.  All fees payable subsequent to the Effective Date under section 1930(a)(6) of title 28 of the United States Code shall be paid by the Reorganized Debtors.  All post-confirmation reporting requirements shall also be complied with, including the reporting of disbursement activity.

12.5    Successors and Assigns.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

12.6    Exculpation and Limitation of Liability.  Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date, (1) the Debtors and Musselman, as the Debtors' representative, and their consultants, current counsel, advisors, and other agents, successors and assigns, and (2) Navarro and his current counsel, advisors, and other agents, successors and assigns shall be deemed released from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, relating to, or arising out of, the

Chapter 11 Cases, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the Property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and the Debtors and Musselman, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

12.7   <u>Release by Holders of Claims and Interests</u>.  On the Effective Date, each Person that votes to accept the Plan, to the fullest extent permissible under applicable law, as such law may be extended subsequent to the Effective Date, in consideration of the obligations of the Debtors under the Plan and the Cash to be distributed under the Plan, shall have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, Musselman and Navarro from any and all Claims or liability, arising from, based on, or relating to, in whole or in part, the subject matter, of, or the occurrence or event in any manner relating to such subject matter, transaction, or obligation existing as of the Effective Date and thereafter; provided, however, that nothing in this section 12.7 shall release the Debtors from any obligations with respect to or in connection with the treatment of the Claims or Interests as provided under the Plan; and provided further, that the Chapter 11 Debtors shall nonetheless be released if the Chapter 11 Debtors can demonstrate it, he or she acted (or failed to act, in the case of a Claim or Interest based upon the failure to act) in good faith or in reasonable reliance upon the advice of counsel.

12.8   <u>Debtors' Release of Claims Against Musselman</u>.  In consideration of Musselman's agreement to fund certain Administrative Claims of these Chapter 11 Cases and to waive substantial claims and rights in the Causes of Action, and to fund the Hicks & Furst escrow account, each of the Debtors, on the Effective Date, to the fullest extent permissible under applicable law, shall be deemed to have released Musselman from liability for any and all claims.

12.9   <u>Injunction</u>.  Except as otherwise provided in the Plan, on and after the Effective Date, all Entities who have held, hold or may hold Claims against or Interests in the Debtors are, with respect to any such Claims or Interests, permanently enjoined from and after the Effective Date from:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Debtors' Chapter 11 representative Musselman or his counsel, the Debtors' general bankruptcy counsel, the Debtors' Estates, any of their Property, or any direct or indirect transferee of any such Property, including Farmar and Navarro), or any direct or indirect successor in interest to, any of the foregoing Entities, or any Property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtors, the Debtors' Chapter 11 representative and counsel, the Debtors' Estates, any of their Property, or any direct or indirect transferee of any Property of, or direct or indirect successor in interest to any of the foregoing Entities; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Debtors' Chapter 11 representative and

counsel, the Debtors' Estates, any of their Property, or any direct or indirect transferee of any Property of, or direct or indirect successor in interest to any of the foregoing Entities or against any Property of the foregoing Entities; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, the Debtors' Chapter 11 representative and counsel, the Debtors' Estates, any of their Property, or any direct or indirect transferee of any Property of, or successor in interest to, any of the foregoing Entities; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.

12.10   Cramdown.   To the extent any Impaired Class of Claims or Interest Holders entitled to vote on the Plan votes to reject the Plan, the Chapter 11 Debtors reserves the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es).

12.11   Governing Law.   Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

12.12   Notices.   Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to the Chapter 11 Debtors:          Avia Energy Development, LLC, et al
                                       c/o  James C. Musselman, President
                                       8401 N. Central Expressway, Suite 280
                                       Dallas, TX 75225

with a copy to:                        Marvin R. Mohney, Esq.
                                       120 Founders Square
                                       900 Jackson Street
                                       Dallas, Texas 75202
                                       Telephone: 214-698-3011
                                       Facsimile: 214-698-9207
                                       Email: marvinmohney@aol.com
                                       ATTORNEY FOR THE DEBTORS

12.13   Saturday, Sunday or Legal Holiday.   If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.14   Section 1146 Exemption.   Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal Property of the Debtors pursuant to, in

implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax or similar tax or fee.

12.15  <u>Severability</u>.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event that any such holding, alteration, or interpretation alters or eliminates one or more material terms of the Compromise and Settlement Agreement, the Plan shall be deemed to be withdrawn.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.16  <u>Headings</u>.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

## ARTICLE XIII

## CONFIRMATION REQUEST

13.1  The Chapter 11 Debtors hereby request confirmation of the Plan pursuant to sections 1129(a) and (b) of the Bankruptcy Code.

DATED:  May 8, 2007

Respectfully submitted,


AVIA ENERGY DEVELOPMENT, LLC.


*/s/ James C. Musselman*
By:_____
James C. Musselman, President



AVIA DE MEXICO S. DE R.L. DE C.V


*/s/   James C. Musselman*
By:_____
James C. Musselman, President
