U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed October 23, 2007**                                       **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AVIA ENERGY DEVELOPMENT, LLC | § | CASE NO. 05-39339-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| AVIA de MEXICO S. De R.L. de C.V. | § | CASE NO. 05-39342-BJH-11 |
| | § | Post-confirmation |
| Debtor. | § | Jointly Administered |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a dispute over the contents of an order to be entered in connection with the request for final allowance of fees and expenses (the "Final Fee Application") filed by Scheef & Stone, L.L.P. ("S&S"), special litigation counsel for Avia Energy Development L.L.C. ("Avia USA") and Avia de Mexico De R.L. C.V. ("Avia Mexico") (collectively referred to herein as the "Debtors"). The Court has core jurisdiction over the Final Fee Application in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and

conclusions of law regarding the dispute over the form of the order to be entered allowing, in part, and disallowing, in part, the Final Fee Application.

**I.    Factual and Procedural Background**

The Final Fee Application was filed on March 23, 2007.[1]  *See* Docket No. 151.  On May 9, 2007, the Debtors' principal, James Musselman ("Musselman"), and the Debtors filed their Response and Objections to Scheef & Stone's Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses, and Memorandum in Support Thereof (the "Debtors' Objection"). *See* Docket No. 176.  On May 14, 2007, Michael Farmar ("Farmar") and Dr. Carlos Francisco Navarro ("Navarro"), two creditors of the Debtors, filed their Objections to the Final Fee Application of Scheef & Stone, LLP and Joinder in Musselman's and Debtor's Response and Objections to Scheef & Stone's LLP's Final Fee Application and Memorandum in Support Thereof (the "Creditors' Objection").  *See* Docket No. 182.  On July 23, 2007, Musselman and the Debtors filed their Amended Response and Objections to Scheef & Stone's Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses, and Memorandum in Support Thereof (the "Debtors' Amended Objection"), which withdrew certain of the objections contained in the Debtors' Objection.  *See* Docket No. 226.

The Final Fee Application was set for hearing on August 29 and 30, 2007.  Two days prior to the scheduled fee hearing, counsel for Musselman, the Debtors, and S&S appeared before the Court in connection with an emergency hearing on a motion to compel filed by S&S, at which time those parties announced that they wished to enter into an agreement pursuant to which S&S would

---

[1] S&S filed two supplements to the Final Fee Application.  *See* Docket Nos. 169 & 267.

withdraw the emergency motion to compel in exchange for Musselman's and the Debtors' agreement to limit the scope of the Debtors' Amended Objection. The Court accepted the parties' agreement, which was filed of record. *See* Docket No. 272, Exhibit A (the "Agreement"). Farmar and Navarro were not parties to the Agreement and did not agree to limit the Creditors' Objection.

The Court heard the Final Fee Application on August 29 and 30, 2007. At the outset of the hearing, counsel for Farmar and Navarro asked the Court to rule on the effect of the potential allowance of fees and expenses on Avia Mexico's alleged pre-petition malpractice claim against S&S relating to the Gomez litigation in Mexico (the "Gomez Litigation"). In essence, counsel stated that if the outcome of the hearing would not affect Navarro's rights as the soon-to-be owner of Avia Mexico (under the confirmed, but not yet effective, joint plan of reorganization for the Debtors) to subsequently bring such a malpractice claim against S&S for its handling of the Gomez Litigation, he would not continue to participate in the hearing on the Final Fee Application as he had no other objection to the allowance of S&S's fees that was not cumulative of the Debtors' objections. No party had raised[2] or briefed this issue in their pre-hearing filings, and S&S was unwilling to agree that the entry of an order on the Final Fee Application would have no effect on Avia Mexico's pre-

---

[2] While Farmar and Navarro joined in the Debtors' Objection and mentioned the existence of Avia Mexico's potential claims against S&S in two sentences of the Creditors' Objection, they did not ask the Court to declare that an allowance of fees to S&S would not affect Avia Mexico's malpractice claim against S&S. *See* Creditors' Objection at ¶ 5 ("Now, Musselman and Debtors assert that Scheef & Stone and Kim Elkjer may have committed malpractice in failing to take steps to protect against Mr. Gomez.") and ¶ 8 ("More importantly, Avia de Mexico has claims against Elkjer.") Rather, Farmar and Navarro simply asked "that this Court deny Scheef & Stone, LLP's reimbursement from the Debtor's estate for the requested amount of further fees and expenses . . . ." Creditors' Objection at p. 5. Moreover, the Debtors' Objection was amended by the Debtors' Amended Objection, which was then further limited by the Agreement. As relevant here, in the Debtors' Amended Objection, the Debtors withdrew: (i) their allegations about S&S's failure to take appropriate action in connection with the Gomez Litigation, (ii) their allegations about alleged inappropriate post-termination conduct by S&S, and (iii) their request for the disallowance of post-petition fees to S&S as a result of the Debtors' alleged pre-petition and post-termination claims against S&S.

**Memorandum Opinion and Order**                                                                                           **Page 3**

petition malpractice claim against it in connection with the Gomez Litigation. Because the issue had not been raised prior to the commencement of the fee hearing, the Court declined to address it at that time.

The Court then proceeded to hear the evidence in support of, and in opposition to, the allowance of the Final Fee Application. At the conclusion of the fee hearing, the Court announced its substantive rulings on the Final Fee Application, after considering the evidence presented and the substantive allegations contained in the Debtors' Amended Objection (as limited by the Agreement) and the Creditors' Objection. Although the Court will not repeat its oral ruling in this Memorandum Opinion and Order, for the reasons stated in detail on the record at the conclusion of the fee hearing, which are incorporated herein by reference, the Court granted the Final Fee Application in part, allowing S&S fees in the amount of $199,243.30 and expenses in the amount of $14,946.22, and disallowing fees in the amount of $61,057.50. In other words, the Court sustained some of the objections raised in the Debtors' Amended Objection (as limited by the Agreement) and overruled others. The Court then requested that S&S prepare an order consistent with the Court's oral ruling.

Thereafter, the Court became aware of a dispute between the parties over the appropriate form of such an order. The primary issue in dispute involved the effect of the partial allowance of fees and expenses on (i) certain pre-petition claims the Debtors believe they have against S&S for alleged malpractice in connection its handling of the Gomez Litigation (the "Pre-Petition Malpractice Claim"), and (ii) certain claims the Debtors believe they have against S&S arising from actions taken by S&S after the firm was terminated (the "Post-Termination Claim"). Specifically, Musselman, the

Debtors, Farmar, and Navarro[3] requested the inclusion of language in the proposed Order that provided that

> It is further ORDERED that nothing in this Order shall affect or impair any rights, claims or causes of action of the Debtors and/or James Musselman against Scheef & Stone, LLP or any of its attorneys arising out of the actions or inactions of Scheef & Stone, LLP or any of its attorneys for the period of time before August 18, 2005 (for which Scheef & Stone, LLP has acknowledged full payment) and for the period of time after March 12, 2007, all of which are expressly reserved.

Objectors' Proposed Order filed September 5, 2007, at pp. 2-3.  S&S refused to consent to the inclusion of this language in an order concerning the Final Fee Application.

Because the parties had not raised or briefed this issue in their pre-hearing submissions, by email dated September 17, 2007, the Court asked the parties to brief the following issue – "[w]hat effect, if any, does the allowance of a final fee application in a bankruptcy case have on claims that exist between the debtor and the law firm: (i) prior to the bankruptcy filing and/or (ii) after termination of the law firm's engagement post-petition?"  On September 27, 2007, the parties simultaneously filed their respective briefs addressing this issue.  *See* Docket No. 272 (James S. Musselman's and Debtors' Joint Brief Regarding Effect of Order Concerning Final Application of Scheef & Stone, LLP for Allowance and Payment of Compensation and Reimbursement of Expenses (the "Debtors' Brief")); Docket No. 273 (S&S's Brief Regarding the Court's Order on its Fee Application (the "S&S Brief")); and Docket No. 271 (Navarro's and Farmar's Brief Regarding Scope of Order Concerning Scheef & Stone LLP's Final Fee Application (the "Creditors' Brief")).[4]

---

[3]As noted previously, Farmar and Navarro also requested the inclusion of this language because under the terms of the Debtors' joint plan of reorganization, Navarro would become the owner of reorganized Avia Mexico.

[4]The Creditors' Brief simply adopts the arguments contained in the Debtors' Brief.

II. **Contentions of the Parties**

In their briefs, the parties discuss the res judicata effect of an order partially allowing fees to a debtor's special litigation counsel on both the Pre-Petition Malpractice Claim and the Post-Termination Claim. S&S argues that the inclusion of the requested "without prejudice" language is inappropriate because the Debtors and Musselman could and should have adjudicated the Pre-Petition Malpractice Claim and the Post-Termination Claim as part of the contested fee application hearing. In short, S&S argues that Musselman and the Debtors are barred from subsequently bringing such claims against it because they arise out of the same nucleus of operative facts and should have been tried as part of the contested fee application hearing. Moreover, S&S argues that Musselman and the Debtors "waived any such complaints by failing to put on any evidence at the hearing." S&S Brief at p. 5.

In contrast, Musselman and the Debtors[5] argue that res judicata does not bar the Pre-Petition Malpractice Claim or the Post-Termination Claim against S&S because those claims "do not arise out of the same nucleus of operative facts as those services for which S&S sought compensation for services during the period of its post-petition employment as the Debtors' special litigation counsel." Debtors' Brief at p. 9. Moreover, Musselman and the Debtors argue that

> [T]here is no nexus between Scheef & Stone's offending pre-petition services and post-termination conduct, on the one hand, and those services for which Scheef & Stone sought compensation during its tenure as the Debtors' special litigation counsel, on the other hand. Likewise, Scheef & Stone cannot seriously urge that the Debtors could have or should have brought its claims in response to the Fee Application, and should be precluded from asserting these claims later, because: (a) Scheef & Stone agreed that the Debtors need not raise such claims at the fee

---

[5] As noted previously, Farmar and Navarro join in these arguments.

>application hearing pursuant to the [Agreement]; (b) Scheef & Stone agreed that the Objectors retained all claims against it as part of the Confirmation Order; and (c) the Plan and Settlement Agreement, to which Scheef & Stone had an opportunity to object, reserved all of the Objectors' claims against it.

Debtors' Brief at p. 11. Musselman and the Debtors also argue that collateral estoppel does not bar the Debtors' claims because the legal and factual issues surrounding the Pre-Petition Malpractice Claim and the Post-Termination Claim were not "actually and necessarily determined" in connection with the Court's consideration of the Final Fee Application. Debtors' Brief at p. 12. Next, Musselman and the Debtors argue that these claims were not compulsory counterclaims to the Final Fee Application and, as such, were not waived by their failure to asset them during the hearing on the Final Fee Application. Finally, Musselman and the Debtors argue that because the Final Fee Application was heard post-confirmation, "there is no federal bankruptcy jurisdiction over those claims arising out of Scheef & Stone's pre-petition or post-termination conduct." Debtors' Brief at p. 15.

### III.    Legal Analysis

Before reaching any of the issues briefed by the parties, the Court must address a threshold question – *i.e.*, is it appropriate for the Court to attempt to determine the effect of an order concerning a Final Fee Application it is about to enter on hypothetical litigation claims that Musselman and/or one or both of the Debtors *may* bring in the future? When the question is stated this way, the answer is quite clear. This Court cannot decide hypothetical disputes. If Avia Mexico (or any other proper party) brings the Pre-Petition Malpractice Claim against S&S, and S&S raises

res judicata and waiver as affirmative defenses to the pursuit of the Pre-Petition Malpractice Claim, the court hearing that claim will be entitled to decide whether the partial allowance of fees to S&S for its representation of the Debtors during an unrelated time period (*i.e.*, after their bankruptcy filings), and for what appears to be unrelated services, bars the subsequent assertion of the Pre-Petition Malpractice Claim, because of either res judicata, waiver, or any other defense raised by S&S at that time.

Similarly, if either Avia Mexico or Avia USA (or any other proper party) brings the Post-Termination Claim against S&S, and S&S raises res judicata and waiver as affirmative defenses to the pursuit of the Post-Termination Claim, the court hearing that claim will be entitled to decide whether the partial allowance of fees to S&S for its representation of the Debtors during an unrelated time period – *i.e.*, after their bankruptcy filings and prior to S&S's termination as special litigation counsel – bars the subsequent assertion of the Post-Termination Claim, because of either res judicata, waiver, or any other defense raised by S&S at that time.

This Court can only rule on the objections actually raised by Musselman and the Debtors in the Debtors' Amended Objection (as limited by the Agreement) and by Farmar and Navarro in the Creditors' Objection. In the Agreement, Musselman and the Debtors agreed to limit their objections to the Final Fee Application to seven (7) delineated items.[6] *See* Agreement at p. 1. The Agreement

---

[6] It appears that there are only 6 numbered items in the Agreement. However, the parties mis-numbered the paragraphs and two paragraphs are numbered "3." If numbered correctly, there would be 7 numbered paragraphs of objections.

**Memorandum Opinion and Order**     **Page 8**

does not ask this Court to disallow post-petition fees to S&S because of the existence of either the Pre-Petition Malpractice Claim or the Post-Termination Claim. Nor did the parties agree in the Agreement that this Court should "declare" the effect of its order concerning the Final Fee Application on the Pre-Petition Malpractice Claim or the Post-Termination Claim. Accordingly, those matters were not before the Court at the hearing on the Final Fee Application. In its oral ruling at the conclusion of the fee hearing, this Court ruled on all of objections raised by Musselman and the Debtors in the Agreement.

Turning to the Creditors' Objection, the Court first notes that Farmar and Navarro incorporated the Debtors' Objection (but not the Debtors' Amended Objection) into the Creditors' Objection "to the extent not inconsistent with the specific objections" they then asserted for themselves. Creditors' Objection at p. 2. The specific objections asserted by Farmar and Navarro are three-fold. First, that S&S "should not be permitted to recover for work that was (or should have been) done pre-petition." *Id.* Second, that S&S was not representing the Debtor, *id.* at p. 3, and thus should not be paid by the Debtor. And third, that Elkjer and S&S's "actions have been undertaken for the benefit of Musselman, not the Debtor," *id.* at p. 4, and thus should not be paid by the Debtor.

The Court addressed the first specific objection in its oral ruling at the conclusion of the fee hearing and made certain adjustments to S&S's requested fees. Farmar and Navarro failed to introduce any credible evidence to support their second and third specific objections. Accordingly, to the extent not specifically mentioned in its oral ruling at the conclusion of the fee hearing, those

objections are overruled.

Finally, regarding the objections that Farmar and Navarro "incorporated" from the Debtors' Objection, the Court finds that those objections essentially break down into two discrete types of objections. First, Musselman and the Debtors raised fairly traditional specific objections to the reasonableness of S&S's post-petition fees and expenses – *i.e.*, unnecessary duplication, excessive hourly rates, etc. – and the necessity of S&S's specific post-petition services – *i.e.*, S&S undertook activities beyond the scope of their retention, etc. Second, Musselman and the Debtors complained about S&S's handling of the Gomez Litigation pre-petition and S&S's conduct after their special counsel engagement was terminated, and requested the disallowance of fees to S&S because of the existence of the Pre-Petition Malpractice Claim and the Post-Termination Claim. In its oral ruling at the conclusion of the fee hearing, the Court addressed the specific objections raised by the parties that fell within the first category of objections.

The second category of objections – *i.e.*, the allegations about the Pre-Petition Malpractice Claim and the Post-Termination Claim, and Musselman's and the Debtors' request for the disallowance of fees to S&S because of the existence of the Pre-Petition Malpractice Claim and the Post-Termination Claim – were withdrawn by Musselman and the Debtors. Even if Farmar and Navarro continued to raise those issues by virtue of their "adoption" of the Debtors' Objection, the Court concludes that because Farmar and Navarro did not own either the Pre-Petition Malpractice Claim or the Post-Termination Claim, they could not assert objections to the allowance of S&S's

post-petition fees based upon the existence of those alleged claims. While Navarro became the sole shareholder of Avia Mexico on or about September 27, 2007 when the Debtors' joint plan of reorganization became effective, Navarro did not control either Debtor prior to that time and could not speak for either Debtor with regard to the pursuit of either the Pre-Petition Malpractice Claim or the Post-Termination Claim – *i.e.*, either when the Creditors' Objection was filed or when the Final Fee Application was heard. Alternatively, even if Navarro has a sufficient interest (as the prospective future sole shareholder of Avia Mexico) to request the disallowance of post-petition fees to S&S because of the existence of the Pre-Petition Malpractice Claim and the Post-Termination Claim, the Court concludes that the existence of those potential claims is not a proper basis for the disallowance of fees. In other words, it would be improper to disallow fees to S&S for its services to the Debtors post-petition based upon unrelated, unliquidated claims the Debtors *may* choose to pursue against S&S in the future. *In re First Colonial Corp. of America*, 544 F.2d 12991, 1298 (5th Cir. 1977) (bankruptcy court is to consider twelve enumerated factors to provide an objective basis for determining the amount of reasonable compensation).[7] Accordingly, to the extent properly raised by Navarro and/or Farmar in the Creditors' Objection, that objection is overruled as an inappropriate

---

[7] The factors the bankruptcy court is to consider are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

basis upon which to disallow fees to S&S for its work post-petition as the Debtors' special litigation counsel.

For all of these reasons, the Court declines to opine upon the effect of its order concerning the Final Fee Application on hypothetical claims Musselman and/or the Debtors *may* choose to bring against S&S in the future. Accordingly, the Court declines to include language specifically preserving (or not preserving) those claims. The order entered by the Court will simply not address this issue. That will allow a subsequent court of competent jurisdiction to decide the merits of whatever defenses S&S may raise in the future if such claims are brought against it. Accordingly, it is

**ORDERED** that the Final Fee Application is hereby approved in part and denied in part as set forth below; it is further

**ORDERED** that, for the reasons set forth on the record at the conclusion of the fee hearing, the fees incurred by S&S from August 18, 2005 through March 12, 2007 in the amount of $199,243.30 are allowed; it is further

**ORDERED** that, for the reasons set forth on the record at the conclusion of the fee hearing, the fees incurred by S&S from August 18, 2005 through March 12, 2007 in the amount of $61,057.50 are disallowed; it is further

**ORDERED** that, for the reasons set forth on the record at the conclusion of the fee hearing, the expenses incurred by S&S on behalf of the Debtors from August 18, 2005 though March 12,

2007 in the amount of $14,946.22 are allowed.

### End of Memorandum Opinion and Order ###